UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHENZHEN CHITADO TECHNOLOGY CO., LTD,<br><br>                 *Plaintiff*,<br><br>    v.<br><br>G11 FLASH BLUE, GY-T581-K1, GY-G11-BLACK, GY-G11-BLUE, GY-T581-BLUE, T580-BLACK, T580-PINK, G5-BLUE, G5-BLACK, G2-RED, G2-BLUE, G2-BLACK,<br><br>                 *Defendants*. | CASE NO. 22-cv-00191 |

## COMPLAINT

Shenzhen Chitado Technology Co., Ltd ("Plaintiff" or "Shuoxin"), through its undersigned counsel, hereby allege as follows against G11 FLASH BLUE, GY-T581-K1, GY-G11-BLACK, GY-G11-BLUE, GY-T581-BLUE, T580-BLACK, T580-PINK, G5-BLUE, G5-BLACK, G2-RED, G2-BLUE, G2-BLACK  (collectively, "Defendants"):

## INTRODUCTION

1.    This action involves claims for trademark infringement of Plaintiff's federally registered trademarks in violation of § 32 of the Federal Trademark (Lanham) Act, 15 U.S.C. §§ 1051 et seq.; counterfeiting of Plaintiff's federally registered trademarks in violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d) and 1117(b)-(c) and related state and common law claims, arising from the infringement of the GYROOR Mark (Reg. No. 5,121,077), including, without limitation, by manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling unlicensed, counterfeit and infringing versions of Plaintiff's products by Defendants.

## JURISDICTION AND VENUE

2. This Court has federal subject matter jurisdiction over the claims asserted in this Action pursuant to 28 U.S.C. §§ 1331 and 1338(a), as well as pursuant to 15 U.S.C. § 1121 as an action arising out of violations of the Lanham Act, 15 U.S.C. §§ 1051 et seq.; pursuant to 28 U.S.C. §1338(b) as an action arising out of claims for trademark infringement and pursuant to 28 U.S.C. § 1332, as there is diversity between the parties and the matter in controversy exceeds, exclusive of interests and costs, the sum of seventy-five thousand dollars. This Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367(a), as the claims asserted thereunder are so closely related to the federal claims brought in this Action as to form part of the same case or controversy.

3. Personal jurisdiction exists over Defendants in New York pursuant to N.Y.C.P.L.R. § 302(a)(1) and N.Y.C.P.L.R. § 302(a)(3), or in the alternative, Federal Rule of Civil Procedure 4(k), because, upon information and belief, Defendants regularly conduct, transact and/or solicit business in New York, and/or derive substantial revenue from their business transactions in New York and/or otherwise avail themselves of the privileges and protections of the laws of the State of New York such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and due process, and/or Defendants' illegal counterfeiting and infringing actions caused injury to Plaintiff in New York such that Defendants should reasonably expect such actions to have consequences in New York, for example:

    a. Upon information and belief, Defendants were and/or are systematically directing and/or targeting their business activities at consumers in the U.S., including New York, through accounts with online marketplace platforms such as newegg as well as any and all as yet undiscovered User Accounts, through which consumers in the U.S., including New York, can view one or more of Defendants' Merchant Storefronts that each

        Defendant operates, uses to communicate with Defendants regarding their listings for Counterfeit Products and to place orders for, receive invoices for and purchase Counterfeit Products for delivery in the U.S., including New York, as a means for establishing regular business with the U.S., including New York.

    b.    Upon information and belief, Defendants are sophisticated sellers, each operating one or more commercial businesses through their respective User Accounts, using their Merchant Storefronts to manufacture, import, export, advertise, market, promote, distribute, offer for sale and/or otherwise deal in products, including the Counterfeit Products at significantly below-market prices to consumers worldwide, including to those in the U.S., and specifically New York.

    c.    Upon information and belief, all Defendants accept payment in U.S. Dollars and offer shipping to the U.S., including to New York and specifically to the New York Address.

    d.    Upon information and belief, Defendants have transacted business with consumers located in the U.S., including New York, for the sale and shipment of Counterfeit Products.

    e.    Upon information and belief, Defendants are aware of Plaintiff, its Products and its GYROOR Mark, and are aware that their illegal counterfeiting and infringing actions alleged herein are likely to cause injury to Plaintiff in the U.S. and specifically, in New York.

4.    Venue is proper, inter alia, pursuant to 28 U.S.C. § 1391 because, upon information and belief, Defendants conduct, transact and/or solicit business in New York.

## THE PARTIES

5. Plaintiff is a limited company organized and existing under the laws of the People's Republic of China.

6. Defendants are individuals and business entities who, upon information and belief, reside mainly in the People's Republic of China or other foreign jurisdictions. Defendants conduct business throughout the United States, including within New York and in this Judicial District, through the operation of the fully interactive commercial websites and online marketplaces operating under the Defendant Internet Stores. Each Defendant targets the United States, including New York, and has offered to sell and, on information and belief, has sold and continues to sell counterfeit GYROOR products to consumers within the United States, including New York and in this Judicial District.

## GENERAL ALLEGATIONS

7. The Plaintiff's Products are marketed under the GYROOR trademark. The GYROOR Brand is recognized for its distinctive graphic and logo-heavy designs. Plaintiff has earned an international reputation for quality, reliability and value and is credited for many breakthroughs that have occurred in the Hoverboard industry.

8. Plaintiff has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting the GYROOR Products. As a result, products bearing the name and mark "GYROOR" are widely recognized and exclusively associated by consumers, the public, and the trade as being products sourced from Plaintiff.

9. The success of the GYROOR brand has resulted in its counterfeiting. Plaintiff has identified numerous domain names linked to fully interactive website and marketplace listings on platform Newegg, including the Defendant Internet Stores, which were offering for sale, selling, and importing counterfeit GYROOR Hoverboard to consumers in this Judicial District and

throughout the United States. Defendants have persisted in creating the Defendant Internet Stores. According to an intellectual property rights seizures statistics report issued by the United States Department of Homeland Security, the manufacturer's suggested retail price ("MSRP") of goods seized by the U.S. government in fiscal year 2017 was over $1.2 billion. Internet websites like the Defendant Internet Stores are also estimated to contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue every year.

10. On personal knowledge and belief, Defendants facilitate sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers selling genuine GYROOR products. Many of the Defendant Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards, Western Union, and PayPal. Defendant Internet Stores often include images and design elements that make it very difficult for consumers to distinguish such counterfeit sites from an authorized website. Defendants further perpetuate the illusion of legitimacy by offering "live 24/7" customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers.

11. Plaintiff has not licensed or authorized Defendants to use the GYROOR mark, and none of the Defendants are authorized retailers of genuine GYROOR Products.

12. Defendants' Counterfeit Products are nearly indistinguishable from Plaintiff's GYROOR Products, only with minor variations that no ordinary consumer would recognize.

13. On personal knowledge and belief, Defendants deceive unknowing consumers by using the GYROOR Mark without authorization within the product descriptions of their Defendant Internet Stores to attract customers, as well as embodied by the counterfeit products themselves.

14. On personal knowledge and belief, Defendants also deceive unknowing consumers by using the name and mark "GYROOR" as originally used by Plaintiff in connection with the genuine GYROOR Products, within the content, text, and/or meta tags of their websites to attract

various search engines crawling the Internet looking for websites relevant to consumer searches for GYRPPR Products. Additionally, upon information and belief, Defendants use other unauthorized search engine optimization ("SEO") tactics and social media spamming so that the Defendant Internet Stores listings show up at or near the top of relevant search results and misdirect consumers searching for genuine GYROOR Products. Further, Defendants utilize similar illegitimate SEO tactics to propel new domain names to the top of search results after others are shut down. As such, Plaintiff also seeks to disable Defendant Domain Names owned by Defendants that are the means by which the Defendants could continue to sell counterfeit GYROOR products into this District.

15. On information and belief, Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores. For example, it is common practice for counterfeiters to register their domain names with incomplete information, randomly typed letters, or omitted cities or states, as Defendants here have done. And many Defendant Domain Names use privacy services that conceal the owners' identity and contact information. On personal knowledge and belief, Defendants regularly create new websites and Online Marketplace Accounts on various platforms using the identities listed in the Complaint, as well as other unknown fictitious names and addresses. Such Defendant Internet Store registration patterns are one of many common tactics used by the Defendants to conceal their identities, the full scope and interworking of their massive counterfeiting operation, and to avoid being shut down.

16. On personal knowledge and belief, even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendant Internet Stores. For example, some of the Defendant websites have virtually identical layouts, even though different

aliases were used to register the respective domain names. In addition, the counterfeit GYROOR products for sale in the Defendant Internet Stores bear similarities and indicia of being related to one another, suggesting that the counterfeit GYROOR products were manufactured by and come from a common source and that, upon information and belief, Defendants are interrelated. The Defendant Internet Stores also include other notable common features, including use of the same domain name registration patterns, unique shopping cart platforms, accepted payment methods, check-out methods, meta data, illegitimate SEO tactics, HTML user-defined variables, domain redirection, lack of contact information, identically or similarly priced items and volume sales discounts, similar hosting services, similar name servers, and the use of the same text and images.

17. In addition to operating under multiple fictitious names, Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts. For example, counterfeiters like Defendants will often register new domain names or Online Marketplace Accounts under new aliases once they receive notice of a lawsuit. Counterfeiters also often move website hosting to rogue servers located outside the United States once notice of a lawsuit is received. Rogue servers are notorious for ignoring take down demands sent by brand owners. Counterfeiters also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection. A 2012 U.S. Customs and Border Protection report on seizure statistics indicated that the Internet has fueled "explosive growth" in the number of small packages of counterfeit goods shipped through the mail and express carriers.

18. Further, counterfeiters such as Defendants typically operate multiple credit card merchant accounts and PayPal accounts behind layers of payment gateways so that they can continue operation in spite of Plaintiff's enforcement efforts. On personal knowledge and belief,

Defendants maintain off-shore bank accounts and regularly move funds from their PayPal accounts to off-shore bank accounts outside the jurisdiction of this Court. Indeed, analysis of PayPal transaction logs from previous similar cases indicates that offshore counterfeiters regularly move funds from U.S.-based PayPal accounts to foreign-based bank accounts outside the jurisdiction of this Court.

19. Defendants, without any authorization or license from Plaintiff, have knowingly and willfully used and continue to use the GYROOR Mark in connection with the advertisement, distribution, offering for sale, and sale of counterfeit GYROOR Products into the United States and New York over the Internet, and by reference to the same name and mark as the original GYROOR Product, is marketed and/or sold by, being "GYROOR". Each Defendant Internet Store offers shipping to the United States, including New York and, on information and belief, each Defendant has offered to sell counterfeit GYROOR Products into the United States, including New York.

20. Defendants' use of the GYROOR Mark in connection with the advertising, distribution, offering for sale, and sale of counterfeit GYROOR products, including the sale of counterfeit GYROOR products into New York, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

**FIRST CAUSE OF ACTION**
**(Infringement of Registered Trademarks)**
**[115 U.S.C. § 1114]**

21. Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

22. Plaintiff is the exclusive owner of all right and title to the GYROOR Mark.

8

23. Plaintiff has continuously used the GYROOR Mark in interstate commerce since on or before the dates of first use as reflected in the registration certificates attached hereto as **Exhibit A**.

24. Without Plaintiff's authorization or consent, with knowledge of Plaintiff's well known and prior rights in their GYROOR Mark and with knowledge that Defendants' Counterfeit Products bear counterfeit marks, Defendants intentionally reproduced, copied and/or colorably imitated the GYROOR Mark and/or used spurious designations that are identical with, or indistinguishable from, the GYROOR Mark on or in connection with the manufacturing, import, export, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products.

25. Defendants have manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold their Counterfeit Products to the purchasing public in direct competition with Plaintiff, in or affecting interstate commerce, and/or have acted with reckless disregard of Plaintiff's rights in and to the GYROOR Mark through their participation in such activities.

26. Defendants have applied their reproductions, counterfeits, copies and colorable imitations of the GYROOR Mark to packaging, point-of-purchase materials, promotions and/or advertisements intended to be used in commerce upon, or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling of Defendants' Counterfeit Products, which is likely to cause confusion, mistake, and deception among the general purchasing public as to the origin of the Counterfeit Products, and is likely to deceive consumers, the public and the trade into believing that the Counterfeit Products sold by Defendants originate from, are associated with or are otherwise

authorized by Plaintiff, thereby making substantial profits and gains to which they are not entitled in law or equity.

27. As a direct and proximate result of Defendants' illegal actions alleged herein, Defendants have caused substantial monetary loss and irreparable injury and damage to Plaintiff, their business, their reputation and their valuable rights in and to the GYROOR Mark and the goodwill associated therewith, in an amount as yet unknown, but to be determined at trial, for which Plaintiff has no adequate remedy at law, and unless immediately enjoined, Defendants will continue to cause such substantial and irreparable injury, loss and damage to Plaintiff and their valuable GYROOR Mark.

28. Defendants' continued, knowing, and intentional use of the GYROOR Mark without Plaintiff's consent or authorization constitutes intentional infringement of Plaintiff's federally registered GYROOR Mark in violation of §32 of the Lanham Act, 15 U.S.C. § 1114.

29. Based on Defendants' actions as alleged herein, Plaintiff is entitled to injunctive relief, damages for the irreparable harm that Plaintiff has sustained, and will sustain, as a result of Defendants' unlawful and infringing actions, as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages, treble damages and/or statutory damages of up to $2,000,000 per counterfeit mark per type of goods sold, offered for sale or distributed and reasonable attorneys' fees and costs.

<b><u>SECOND CAUSE OF ACTION</u></b><br><b><u>(Unfair Competition)</u></b><br><b><u>[New York Common Law]</u></b>

30. Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein

31. Plaintiff has not licensed or authorized Defendants to use the GYROOR Mark, and none of the Defendants are authorized retailers of genuine GYROOR Products.

32. Defendants knowingly and intentionally trade upon Plaintiff's reputation and goodwill by selling and/or offering for sale products in connection with Plaintiff's GYROOR Mark.

33. Defendants' promotion, marketing, offering for sale, and sale of counterfeit GYROOR products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the quality, affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of Defendants' counterfeit GYROOR products by Plaintiff.

34. Defendants knew, or should have known, that their promotion, marketing, offering for sale, and sale of counterfeit GYROOR products has caused and will continue to cause confusion, mistake, and deception among purchasers, users, and the public.

35. On information and belief, Defendants' conduct is willful and intentional as Defendants attempt to avoid liability by concealing their identities, using multiple fictitious names and addresses to register and operate their illegal counterfeiting operations and Defendant Internet Stores.

36. Plaintiff has no adequate remedy at law, and Defendants' conduct has caused Plaintiff to suffer damage to its reputation and goodwill. Unless enjoined by the Court, Plaintiff will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

## **PRAYER FOR RELIEF**

37. **WHEREFORE**, Plaintiff prays for judgment against Defendants, inclusive, and each of them, as follows:

   A. For an award of Defendants' profits and Plaintiff's damages pursuant to 15 U.S.C. § 1117(a), enhanced discretionary damages under 15 U.S.C. § 1117(a)(3) and treble

damages in the amount of a sum equal to three (3) times such profits or damages, whichever is greater, pursuant to 15 U.S.C. § 1117(b) for willfully and intentionally using a mark or designation, knowing such mark or designation is a counterfeit mark in violation of 15 U.S.C. § 1114(1)(a);

B. In the alternative to Defendants' profits and Plaintiff's actual damages, enhanced discretionary damages and treble damages for willful use of a counterfeit mark in connection with the sale, offering for sale or distribution of goods or services, for statutory damages pursuant to 15 U.S.C. § 1117(c) in the amount of not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale or distributed, as the Court considers just, which Plaintiff may elect prior to the rendering of final judgment;

C. For an award of Defendants' profits and Plaintiff's damages in an amount to be proven at trial for willful trademark infringement of Plaintiff's federally registered GYROOR Mark, and such other compensatory damages as the Court determines to be fair and appropriate pursuant to 15 U.S.C. § 1117(a);

D. For an award of damages to be proven at trial for common law unfair competition;

E. For a preliminary and permanent injunction by this Court enjoining and prohibiting Defendants, or their agents, and any employees, agents, servants, officers, representatives, directors, attorneys, successors, affiliates, assigns and entities owned or controlled by Defendants, and all those in active concert or participation with Defendants, and each of them who receives notice directly or otherwise of such injunction from:

a) using the GYROOR Mark or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine GYROOR Product or is not authorized by Plaintiff to be sold in connection with the GYROOR Registered Mark;

b) passing off, inducing, or enabling others to sell or pass off any product as a genuine GYROOR Product or any other product produced by Plaintiff that is not Plaintiff's or not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under the GYROOR Mark Registrations;

c) committing any acts calculated to cause consumers to believe that Defendants' counterfeit GYROOR products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

d) further infringing the GYROOR Mark and damaging Plaintiff's goodwill;

e) otherwise competing unfairly with Plaintiff in any manner;

f) shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which copy any Plaintiff Mark, including the GYROOR Mark or any reproductions, counterfeit copies, or colorable imitations thereof;

    g) using, linking to, transferring, selling, exercising control over, or otherwise owning the Online Marketplace Accounts, the Defendant Domain Names, or any other domain name or Online Marketplace Account that is being used to sell or is the means by which Defendants could continue to sell counterfeit GYROOR products; and

    h) operating and/or hosting websites at the Defendant Domain Names and any other domain names registered or operated by Defendants that are involved with the distribution, marketing, advertising, offering for sale, or sale of any product embodying the GYROOR Mark or any reproduction, counterfeit copy or colorable imitation thereof that is not a genuine GYROOR Product or not authorized by Plaintiff to be sold in connection with the GYROOR Mark.

F. For an award of exemplary or punitive damages in an amount to be determined by the Court;

G. For Plaintiff's reasonable attorneys' fees;

H. For all costs of suit; and

I. For such other and further relief as the Court may deem just and equitable.

**DEMAND FOR JURY TRIAL**

Plaintiff respectfully demands a trial by jury on all claims.


Respectfully Submitted:

Date: January 10, 2022

/s/ Ruoting Men
Ruoting Men, Esq.
GLACIER LAW PLLC
200 Park Avenue, Suite 1703
New York, NY 10166
***Attorney for Plaintiff***